**DON BIVENS, PLLC**
Don Bivens (AZ # 005134)
15169 N. Scottsdale Rd., Ste. 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Local Counsel for Lead Plaintiff*
*Movant the Lovingier Family*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller *(pro hac vice to be submitted)*
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*the Lovingier Family and*
*Proposed Lead Counsel for the Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Singh Family Revocable Trust U/A
DTD 02/18/2019, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

Sprouts Farmers Market, Inc., Jack L.
Sinclair, and Curtis Valentine,

        Defendants.

No. 2:25-cv-04416-JJT

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LOVINGIER FAMILY'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

Terry Clay Lovingier and Barbara Kaye Lovingier, as Trustees for the Lovingier Family Trust Dated October 13, 1988 (the "Lovingier Family" or "Movant"), respectfully submit this memorandum of law in support of its motion pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (i) appointing it Lead Plaintiff in this Action; (ii) approving its selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class; (iii) and granting other such relief as the Court may deem proper and just.

## I.      PRELIMINARY STATEMENT

The PSLRA provides that a court must appoint as lead plaintiff of a securities class action the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(i). The Lovingier Family is the most adequate plaintiff because it timely moved for appointment as Lead Plaintiff, possesses the greatest financial interest in the litigation, and satisfies the representative requirements set forth in Federal Rule of Civil Procedure 23. *See* § 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). For the reasons summarized herein and discussed more fully below, the Lovingier Family's Motion should be approved in its entirety.

The Lovingier Family fully understands its duties and responsibilities to the Class. It is willing and able to oversee the vigorous prosecution of this Action. As described in the Lovingier Family's Certification, Loss Chart, and Declaration attached to the Declaration of Don Bivens in Support of the Motion of the Lovingier Family for Appointment as Lead Plaintiff and Approval of its Selection of Counsel ("Bivens Decl."), the Lovingier Family has suffered substantial losses as a result of its purchases of Sprouts Farmers Market, Inc. ("Sprouts" or the "Company") securities between June 4, 2025, and October 29, 2025, inclusive (the "Class Period"). *See* Bivens Decl. at Exhibit A (Lovingier Family's Certification); Exhibit B (Lovingier Family's Loss Chart); and Exhibit D (Lovingier Family's Declaration). To the best of its knowledge, the Lovingier Family has sustained the largest losses of any investor(s) seeking to be appointed Lead Plaintiff.

Additionally, the Lovingier Family fully understands its duties and responsibilities to the Class. As affirmed in its Declaration, the Lovingier Family is willing and able to oversee the vigorous prosecution of this Action. *See* Bivens Decl. at Ex. D. The Lovingier Family's Declaration demonstrates its intent to serve as Lead Plaintiff in this matter, including its cognizance of the duties of serving in that role. *See id.* Moreover, the Lovingier Family satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure. The Lovingier Family has also demonstrated its adequacy through its selection of Kahn Swick & Foti, LLC ("KSF") to serve as Lead Counsel on behalf of the Class. KSF is one of the nation's premier boutique securities litigation firms and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, the Lovingier Family respectfully submits this memorandum of law in support of its motion for an Order: (1) appointing the Lovingier Family as Lead Plaintiff in the Action; and (2) approving its selection of KSF as Lead Counsel.

## II.    PROCEDURAL BACKGROUND

The Complaint in this Action was filed on November 24, 2025. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), two days later, the first notice that a class action had been initiated against Defendants was published over *GlobeNewswire*, a widely circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than January 26, 2026. *See* Bivens Decl. at Exhibit C (Notice). The Lovingier Family is a Class Member that has timely filed this motion within the 60-day period following publication of this Notice. *See* Bivens Decl. at Ex. A, Ex. C.

## III.    FACTUAL BACKGROUND

This is a securities fraud action brought by investors against Defendants Sprouts, Jack L. Sinclair, the Company's Chief Executive Officer ("CEO") and Director, and Curtis Valentine, the Company's Chief Financial Officer ("CFO"). ¶¶ 13, 14. Sprouts is a specialty grocery store chain that caters to more health-conscious shoppers with more than 450 stores across 24 states. ¶¶ 19-20. It is incorporated in Delaware and headquartered in Phoenix, Arizona. ¶ 12. The Company's common stock is listed on the New York Stock Exchange

("NYSE") under the ticker symbol "SFM." ¶ 12.

The Class Period begins on June 4, 2025, when Defendants presented at the 2025 dbAccess Global Consumer Conference. ¶ 21. During the presentation, Sinclair differentiated Sprouts from its competition, claiming its consumer base remains resilient regardless of the macroeconomic impact and stating, in pertinent part:

> I think our customer base is a little bit more resilient to what's going on in the macro environment, I think you've got customers who are very health focused.
> …
> So I think that resilience comes and that gives us a lot of confidence going forward that irrespective of what happens in this pretty significantly uncertain time that we're going to be able to cope and deal with the changes as they come to us.

¶ 21.

Valentine further suggested the cautious consumer creates a "tailwind," pertinently adding, "I think from a trade perspective, trade-in or trade down in that higher income consumer, I mean, one of those trades would be out of food away from home and into food at home, right, which actually creates maybe a little bit of a tailwind as that first wave of activity happens." ¶ 22. Sinclair elaborated further on Sprouts' resilience to macroeconomic impacts, touting the Company's pricing and value proposition as differentiating factors stating:

> We will have a very strong gap in organic product pricing, and we spend a lot of time analyzing where we need to be against conventional grocers and against Whole Foods as we look at our produce pricing.
> …
> Increasingly, we've been getting ourselves in a place where the assortment that we're carrying is not -- does not appear in other places with the possible exception of Whole Foods across the rest of the marketplace, we're not really carrying the same things as the other people.
> …
> And by and large, that the focus of our value proposition is we're giving customers healthy products, differentiated products, innovative products and they will respond to that.

¶ 23.

On July 30, 2025, Sprouts published its second quarter fiscal 2025 results highlighting $2.2 billion in net sales which was an increase from the same period in 2024. ¶ 24. Defendants

also released updated guidance, significantly increasing their full year outlook while forecasting a strong third quarter. ¶ 27. During the accompanying earnings call, Valentine detailed the Company's elevated guidance further, stating, in pertinent part:

> For 2025, we expect total sales growth to be 14.5% to 16% and comp sales in the range of 7.5% to 9%.
>
> …
>
> As we have begun to lap last year's comp step changes, we continue to see consistent 2-year stack performance of approximately 15%.
>
> …
>
> While those tailwinds come and go, the approximately 15% 2-year stack remains consistent and gives us confidence in our increased comp guidance.

¶ 26.

Sinclair touted the Company's recent performance and expressed confidence in their ability to meet the updated financial metrics, stating, in pertinent part:

> Currently, we are seeing strong customer acquisition and an increase in share of wallet.
>
> …
>
> As we look ahead, we remain confident in our strategic direction and Sprouts unique position within the specialty food retail landscape.

¶ 28.

During the question-and-answer segment that followed, Valentine elaborated on the updated guidance stating: "And certainly, we're going to go try to drive it higher and hope that it will be better. But for now, I think it's prudent to kind of stick to the 15% that we've been seeing pretty consistently for several months now." ¶ 29. On the subject of their consumer base's resilience to softening, Sinclair stated that "I think we've always said that our customer base is pretty focused on what they eat and how they eat and how they -- so I think we've got some resilience almost irrespective of what happens in the macro economy" and "our business has proven pretty resilient, as you can see from the numbers." ¶ 30. When asked if he saw a tailwind from the decrease in restaurant traffic, he said "I'm encouraged by that, and it might be helping us a little bit as you go through that going forward." ¶ 30.

The foregoing statements were materially false and misleading because: (i) Sprouts' optimistic reports of growth and stability in the face of macroeconomic instability fell short of reality; (ii) the Company's consumer base was not as resilient to macroeconomic pressures as

Defendants contended and ultimately reduced spend; (iii) the perceived tailwinds from such pressures failed to manifest; and (iv) Sprouts' ability to lap its prior comparables was well overstated, ultimately resulting in the Company being unable to meet its lofty growth projections. ¶ 31.

The truth emerged on October 29, 2025, when Sprouts released its third quarter results disclosing sales growth below both market expectations and Sprouts' own prior guidance and triggering a reduction in the Company's projections. ¶ 32. During the accompanying earnings call, Sinclair admitted that the Company's third quarter results "fell short of our top line expectations. As the quarter progressed, our comp sales moderated faster than expected as we came up against challenging year-on-year comparisons as well as signs of a softening consumer." ¶ 33. Valentine similarly acknowledged that "we expected more from our top line as we underestimated the impact of lapping strong numbers from last year in the context of a softening consumer backdrop." ¶ 34.

Valentine announced the reduction in Sprouts' full-year guidance stating that "we are balancing the strength of our business strategy against the consumer uncertainty and challenging year-over-year comp compares. For the full year, we expect total sales growth to be approximately 14% and comp sales to be approximately 7%." ¶ 35.

During the question-and-answer segment that followed, Sinclair admitted that "we're lapping some tough numbers from last year, and we may have underestimated the challenge of lapping those numbers" and "as we look forward, we're anticipating a challenging environment . . . and we're anticipating a little bit of pressure on the consumer going forward." ¶ 36.

On this news, the price of Sprouts stock dropped $27.30 per share, or more than 26.11%, to close at $77.25 on October 30, 2025. ¶ 38.

## IV. ARGUMENT

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i).

First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. § 78u4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa)    has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C § 78u-4(a)(3)(B)(iii). The Lovingier Family meets each of these requirements and it should therefore be appointed as Lead Plaintiff.

**A.    The Lovingier Family Should Be Appointed Lead Plaintiff**

The Lovingier Family respectfully submits that they should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a lead plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u4(a)(3)(B)(iii)(I).

**1.    Movant Timely Filed Its Motion**

Under the PSLRA, the first plaintiff to file an action must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B); *see, generally*, *Borteanu v. Nikola Corp.*, 562 F. Supp. 3d 174, 180 (D. Ariz. 2021).

Here, notice was first published on *GlobeNewswire* on November 24, 2025, such that the deadline for submission of applications to be appointed Lead Plaintiff is January 26, 2026. *See* Bivens Decl. at Ex. C. Publication by a national firm like *GlobeNewswire* is an adequate

means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. The Lovingier Family therefore timely filed this Motion.

Moreover, with its Motion, the Lovingier Family has signed and submitted the required Certification in which it certifies its trading history and confirms its willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. § 78u-4(a)(2)(A). *See* Bivens Decl. at Ex. A. Accordingly, the Lovingier Family has filed a timely and procedurally complete motion for appointment as Lead Plaintiff in response to a notice that satisfies the statutory requirements.

### 2.    Movant Possesses the Largest Financial Interest

To the best of its knowledge, the Lovingier Family possesses the largest financial interest in the relief sought in this case. *See* Bivens Decl., Ex. B; *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.").

### 3.    Movant Meets the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of lead plaintiffs, Rule 23(a) requires generally that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interest of the class. *See* Fed. R. Civ. P. 23. As detailed below, the Lovingier Family satisfies the typicality and adequacy requirements of Rule 23(a).

The test for the typicality requirement of Rule 23(a)(3) is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Borteanu*, 562 F. Supp. 3d at 181. Here, the Lovingier Family and all other Class Members' claims arise from the same course of conduct and their legal arguments to prove Defendants' liability are nearly identical. Indeed, like all other Class Members, the Lovingier

7

Family: (1) purchased Sprouts securities during the Class Period; (2) in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) was damaged thereby. *See id.* at 182. As such, the Lovingier Family is a typical Class representative.

The Lovingier Family likewise satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interest of the class." The test for whether the adequacy requirement of Rule 23 "asks whether the class representative and counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Id.* at 181 (citation omitted). The Lovingier Family's interests are clearly aligned with the members of the Class and there is no antagonism between its interests and the Class Members' interest.

In addition, the Lovingier Family has also demonstrated its adequacy through its selection of KSF as Lead Counsel to represent the Class in this Action. As discussed more fully below, KSF is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to prosecute complex securities class action litigation effectively.

## V.    THE COURT SHOULD APPROVE MOVANT'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The court should not disturb lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see Cavanaugh*, 306 F.3d at 732 n.11.

Here, the Lovingier Family has selected KSF as Lead Counsel to represent the Class. As reflected in its firm resume, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. *See* Bivens Decl. at Exhibit E (KSF Firm Resume). Dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law

firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *Id.*

KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions. *See* Bivens Decl. at Ex. E, *citing Pearlstein v. BlackBerry Limited, et al.*, No. 13-cv-7060 (S.D.N.Y.) (settled on the eve of trial for $165 million); *In re Chicago Bridge & Iron Co. N.V. Secs. Litig.*, No. 17-cv-1580 (S.D.N.Y) (settled for $44 million after the Court substantially denied Defendants' Motion for Summary Judgement on August 23, 2018); *Hogan v. Pilgrim's Pride Corp., et al.*, No. 16-cv-02611 (D. Colo.) (settled for $41.5 million after the Tenth Circuit vacated in part the district court's dismissal of plaintiff's complaint); *Abramson v. NewLink Genetics Corp., et al.*, No. 16-cv-03545 (S.D.N.Y.) (in which the Second Circuit vacated in part the district court's dismissal of plaintiffs' complaint on July 13, 2020). KSF also served as special counsel and court-appointed Co-Counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 02-cv-1152 (N.D. Tex.), a case that resulted in a $100 million settlement after two trips to the Supreme Court on class certification issues. As these cases demonstrate, KSF possesses the requisite experience and knowledge litigating complex securities cases

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

## VI.   CONCLUSION

For the foregoing reasons, the Lovingier Family requests that the Court: (1) appoint it to serve as Lead Plaintiff in this Action; and (2) approve its selection of KSF as Lead Counsel for the Class.

9

DATED: January 26, 2026                    Respectfully submitted,

                                           */s/ Don Bivens*

                                           **DON BIVENS, PLLC**
                                           Don Bivens (AZ # 005134)
                                           15169 N. Scottsdale Rd., Ste. 205
                                           Scottsdale, AZ 85254
                                           Telephone: (602) 762-2661
                                           don@donbivens.com

                                           *Local Counsel for Lead Plaintiff*
                                           *Movant the Lovingier Family*

                                           **KAHN SWICK & FOTI, LLC**
                                           Kim E. Miller (*pro hac vice to be submitted*)
                                           250 Park Avenue, 7th Floor
                                           New York, NY 10177
                                           Telephone: (212) 696-3732
                                           Facsimile: (504) 455-1498
                                           kim.miller@ksfcounsel.com

                                           *Counsel for Lead Plaintiff Movant*
                                           *the Lovingier Family and Proposed*
                                           *Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                            */s/ Don Bivens*
                                            Don Bivens

10