**DON BIVENS, PLLC**
Don Bivens (AZ # 005134)
15169 N. Scottsdale Rd., Ste. 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Local Counsel for Lead Plaintiff*
*Movant the Lovingier Family*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller *(pro hac vice to be submitted)*
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*the Lovingier Family and*
*Proposed Lead Counsel for the Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Singh Family Revocable Trust U/A DTD 02/18/2019, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Sprouts Farmers Market, Inc., Jack L. Sinclair, and Curtis Valentine, <br><br> Defendants. | No. 2:25-cv-04416-JJT <br><br> **OMNIBUS MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE LOVINGIER FAMILY'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT** |

**TABLE OF CONTENTS**

**Page:**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ..............................................................................................................2

    A.    The Lovingier Family is the Presumptive "Most Adequate Plaintiff" and the Court Should Appoint it as Lead Plaintiff ................................................2

        1.    The Lovingier Family Has the Largest Financial Interest in the Relief Sought ........................................................................................2

        2.    The Lovingier Family "Otherwise Satisfies" the Requirements of Rule 23 ....................................................................................................2

        3.    Competing Movants Cannot Rebut the Presumption That the Lovingier Family is the "Most Adequate Plaintiff" ...........................3

    B.    Mr. Robinson is Susceptible to Unique Defenses .........................................6

    C.    The Poudrier/Rotness Group is Susceptible to Unique Defenses..................8

III.  CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Armour v. Network Associates, Inc.*,
171 F.Supp.2d 1044 (N.D. Cal. 2001)................................................................................ 3

*Bender v. Vertex Energy, Inc.*,
No. 4-24-CV-290, 2024 WL 588445 (S.D. Tex. Feb. 1, 2024).................................... 5, 6

*Borteanu v. Nikola Corporation*,
562 F.Supp.3d 174 (D. Ariz. 2021) ..................................................................................... 3

*Burns v. UP Fintech Holding Ltd.*,
No. CV 23-4842-CBM-BFMX, 2024 WL 387261 (C.D. Cal. Jan. 30, 2024) .............................. 10

*Camp v. Qualcomm Inc.*,
No. 18-CV-1208, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ........................................ 7

*Carson v. Clarent Corp.*,
No. C 01-03361 CRB, 2001 WL 1782712 (N.D. Cal. Dec. 14, 2001)............................. 5

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)............................... 9

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004)........................................................................................ 5

*GGCC, LLC v. Dynamic Ledger Sols., Inc.*,
No. 17-CV-06779-RS, 2018 WL 1388488 (N.D. Cal. Mar. 16, 2018) ......................... 5, 6

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019)........................................ 7

*In re Calpine Corp. Sec. Litig.*,
No. C 02-1200 SBA, 2004 WL 3316309 (N.D. Cal. Feb. 5, 2004) ............................. 8, 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................................... 2, 3

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997)......................................................................................... 9

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002)........................................................................................ 9

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999)................................................................................. 9

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999) ............................................................................................... 8

*In re PolarityTE, Inc. Sec. Litig.*,
No. 2:18-CV-510-JNP, 2019 WL 220129 (D. Utah Jan. 16, 2019) ................................... 8

ii

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) .............................................................. 5, 7, 10, 11

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ...................................................................... 7, 11

*Isaacs v. Musk*,
    No. 18-CV-04865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ...................................... 10

*Koffsmon v. Green Dot Corp.*,
    No. CV 19-10701 DDP (EX), 2021 WL 3473975 (C.D. Cal. Aug. 6, 2021)................................ 10

*Larmay v. AMMO Inc.*,
    No. CV-24-02619-PHX-DJH (ESW), 2025 WL 2548618 (D. Ariz. May 8, 2025)........................ 3

*Lomingkit v. Apollo Educ. Grp. Inc.*,
    No. CV-16-00689, 2016 WL 3345514 (D. Ariz. June 16, 2016)...................................... 3

*Montesano v. Eros Int'l PLC*,
    No. CV1914125JMVJAD, 2020 WL 1873015 (D.N.J. Apr. 14, 2020) ........................................... 6

*Haynie v. Cornell University*,
    No. 3:20-CV-467, 2020 WL 6043947 (N.D.N.Y. Oct. 13, 2020)...................................... 8

*Perez v. HEXO Corp.*,
    No. 19 CIV 10965, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)...................................... 7

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014) ...................................................................... 6

*Stires v. Eco Sci. Sols., Inc.*,
    No. CV 17-3707(RMB/KMW), 2018 WL 5784817 (D.N.J. Feb. 14, 2018) ............................... 10

*Sved v. Matrixx Initiatives, Inc.*,
    No. CIV-04-0886-PHX-MHM, 2005 WL 8158448 (D. Ariz. Jan. 18, 2005)................................ 2

*Switzenbaum v. Orbital Scis. Corp.*,
    187 F.R.D. 246 (E.D. Va. 1999).......................................................................... 5

*Takata v. Riot Blockchain, Inc.*,
    No. 18-cv2293-FLW-TJB, 2018 WL 5801379 (D.N.J. Nov. 6, 2018) ........................................... 9

*Tenneson v. Nikola Corp.*,
    No. CV-23-02131, 2024 WL 905244 (D. Ariz. Feb. 29, 2024) ...................................... 3

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008)................................. 9, 10

*Waterford Twp. Police v. Mattel, Inc.*,
    No. 17CV04732VAPKSX, 2017 WL 10667732 (C.D. Cal. Sept. 29, 2017)............................. 4, 5

**Statutes**

15 U.S.C. § 78u-4...............................................................................................1, 3

iii

## I.  INTRODUCTION

Lead Plaintiff Movant the Lovingier Family Trust Dated October 13, 1988 (the "Lovingier Family" or "Movant") respectfully submits this omnibus memorandum of law in opposition to the competing motions and in further support of its motion for appointment as Lead Plaintiff and approval of selection of Lead Counsel. Four motions seeking appointment as lead plaintiff were filed in this Action by: (1) the Lovingier Family Trust Dated October 13, 1988 (the "Lovingier Family") (ECF No. 22); (2) Peter Robinson ("Mr. Robinson") (ECF No. 18); (3) Carolle Poudrier and Leslie Rotness (the "Poudrier/Rotness Group") (ECF No. 20); and (4) Singh Family Revocable Trust u/a dtd 02/18/2019 (the "Singh Family") (ECF No. 16). The Singh Family withdrew its motion on January 27, 2026 (ECF No. 23).

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that the Court shall appoint as Lead Plaintiff the movant who: (1) files the complaint or a timely motion for appointment as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii).

The Lovingier Family has the largest financial interest in the relief sought with asserted losses of $(259,313.88). *See* ECF No. 22-4. The competing movants fall well short, with Mr. Robinson asserting losses of $(188,976.61) (ECF No. 18-5) and the Poudrier/Rotness Group asserting combined losses of $(158,889.00) (ECF No. 21-1). The Lovingier Family also otherwise satisfies the requirements of Rule 23, as it is adequate to represent the Class's interests and its claims are typical of putative Class members. ECF No. 22-6. The Lovingier Family is thus the presumptive "most adequate plaintiff."

No basis exists to rebut this presumption. Should a competing movant seek to rebut the presumption based on the Lovingier Family's delayed filing, such attempt(s) should be rejected. As evidenced by the Supplemental Declaration of Don Bivens submitted simultaneously herewith, the Lovingier Family sought in good faith to file its Motion before the deadline but, due to technical issues, ultimately filed its Motion before the start of normal business hours at 7:27 a.m. the following morning. This minor delay did not prejudice the

competing movants and thus cannot serve as a basis to rebut the presumption. Further, the Lovingier Family—unlike Mr. Robinson and the Poudrier/Rotness Group—satisfies the adequacy and typicality requirements of Rule 23 without saddling the Class with numerous law firms and without grouping unrelated investors with no pre-existing relationship. For all the reasons set forth herein, the Lovingier Family should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

## II. ARGUMENT

### A. The Lovingier Family is the Presumptive "Most Adequate Plaintiff" and the Court Should Appoint it as Lead Plaintiff

*1. The Lovingier Family Has the Largest Financial Interest in the Relief Sought*

"To determine the presumptively most adequate plaintiff, the Court must identify the plaintiff with 'the largest financial interest in the relief sought by the class.'" *Sved v. Matrixx Initiatives, Inc.*, No. CIV-04-0886-PHX-MHM, 2005 WL 8158448, at \*2 (D. Ariz. Jan. 18, 2005) (citations omitted). In determining which movant has the largest financial interest, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

Here, the Lovingier Family asserts losses of $(259,313.88) (ECF No. 22-4), exceeding Mr. Robinson's asserted losses of $(188,976.61) (ECF No. 18-5) by more than 25% and the Poudrier/Rotness Group's asserted $(158,889.00) combined loss (ECF No. 21-1) by more than 35%. The Lovingier Family unequivocally possesses the "largest financial interest in the relief sought." This factor weighs heavily in favor of the Lovingier Family's appointment as Lead Plaintiff.

*2. The Lovingier Family "Otherwise Satisfies" the Requirements of Rule 23*

"If the plaintiff with the greatest financial interest in the relief sought by the class satisfies Rule 23(a) requirements, then that plaintiff becomes the presumptively most adequate plaintiff." *Sved*, 2005 WL 8158448, at \*2. At this stage, a movant "must only make a *prima*

*facie* showing" that it satisfies the adequacy and typicality requirements. *Tenneson v. Nikola Corp.*, No. CV-23-02131, 2024 WL 905244, at *3 (D. Ariz. Feb. 29, 2024) (citing *In re Cavanaugh*, 306 F.3d at 730)).

Here, the Lovingier Family satisfies these minimal, *prima facie* requirements. The Lovingier Family purchased Sprouts securities during the Class Period and subsequently suffered damages resulting from Defendants' materially false and misleading conduct. *See* ECF No. 22-1 at 7-8. The Lovingier Family's claims arise from the same course of conduct as the putative class members, thus making a "*prima facie* showing that [it] satisfies the typicality requirement of Fed. R. P. 23(a)(3)." *Tenneson*, 2024 WL 905244, at *8.

The Lovingier Family also satisfies the adequacy requirement of Rule 23 because there are no potential conflicts between it and the other Class members, it has sufficient interest in the outcome of the case to ensure vigorous advocacy, and it has retained competent, experienced counsel to represent the Class. *See* ECF No. 22-1 at 8; *Tenneson*, 2024 WL 905244, at *8 ("To determine adequacy, the Court considers 'whether the class representative and counsel have any conflicts of interest with other class members and whether the class representative and his counsel will prosecute the action vigorously on behalf of the class.'") (quoting *Borteanu v. Nikola Corporation*, 562 F.Supp.3d 174, 181 (D. Ariz. 2021)).

>  3.    *Competing Movants Cannot Rebut the Presumption That the Lovingier Family is the "Most Adequate Plaintiff"*

The Lovingier Family has demonstrated it is the presumed "most adequate plaintiff." This presumption may be rebutted "only by proof that the presumptively adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "Speculation is 'insufficient to rebut the lead plaintiff presumption.'" *Larmay v. AMMO Inc.*, No. CV-24-02619-PHX-DJH (ESW), 2025 WL 2548618, at *5 (D. Ariz. May 8, 2025) (quoting *Armour v. Network Associates, Inc.*, 171 F.Supp.2d 1044, 1054 (N.D. Cal. 2001)). The competing movants have no such proof and

3

therefore cannot rebut the presumption that the Lovingier Family is the "most adequate plaintiff."

If competing movants seek to rebut the presumption on the basis of the Lovingier Family's delayed filing, the Court should reject such efforts. "[W]hile the PSLRA's deadline is strict, it does not rob the district court of [its] discretion" to consider motions made after the deadline has passed. *Waterford Twp. Police v. Mattel, Inc.*, No. 17CV04732VAPKSX, 2017 WL 10667732, at *4 n.1 (C.D. Cal. Sept. 29, 2017).

The deadline for motions for appointment as lead plaintiff to be filed in this action was January 26, 2026. *See* ECF No. 22-5. Unfortunately, due to technical difficulties, local counsel was unable to file the Lovingier Family's Motion until approximately 7.5 hours after the deadline. On January 26, 2026, the Lovingier Family's proposed lead counsel, Kahn Swick & Foti, LLC ("KSF"), provided its local counsel, Don Bivens, PLLC ("Bivens"), with the Lovingier Family's finalized Motion for Appointment and related papers (ECF No. 22, the "Motion") prior to the midnight deadline. *See* Supplemental Declaration of Don Bivens in Further Support of the Lovingier Family's Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel ("Supp. Bivens Decl."), at ¶ 5. Bivens was unable to file the Motion prior to the midnight deadline, however, because the firm had not previously utilized Don Bivens's CM/ECF and/or PACER account(s) with Multifactor Authentication ("MFA") to make a filing, which only recently became mandatory. *See* Supp. Bivens Decl. at ¶ 6. Bivens was able to resolve this issue and file the Lovingier Family's motion by approximately 7:27 a.m. local time the following morning, just under 7.5 hours after the deadline. *Id.* at ¶ 7.

Courts typically consider delayed motions for appointment as lead plaintiff where, as here: (1) the delay did not "result from a scheme to manipulate the size of the movant's financial loss"; (2) the delay did not prejudice the other movants nor obstruct the Court in "ensuring that the lead plaintiff is appointed at the earliest possible time"; and (3) "refusing to consider the motion [would] undermine the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." *Bender v. Vertex Energy, Inc.*, No. 4-24-CV-

4

290, 2024 WL 588445, at *10-11 (S.D. Tex. Feb. 1, 2024). The Lovingier Family's submission satisfies all three of these considerations.

First, because the Lovingier Family moved by itself, there is no issue of loss-size manipulation with last minute group cobbling. Courts have found that motions for appointment filed just hours after the deadline give little to no risk of loss calculation manipulation—especially when the movant "is a single investor, not a group of investors who were hastily gathered together after the deadline in response to an earlier filing." *Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at *4 ("While it may be possible for a single investor to review a timely filed motion, manipulate his individual financial losses, and change his filings to gain an unfair advantage, this task would be difficult to undertake in one hour."); *see also Ferreira v. Funko, Inc.*, No. 2:20-CV-02319-VAP-PJWX, 2020 WL 3246328, at *4 (C.D. Cal. June 11, 2020) (where motions were filed "only hours late," the court believed "the risk of Funko Investor Group, Hurt, and Gerber Kawasaki manipulating financial loss calculations was low or zero").

Second, the 7.5-hour delay occurred outside of normal business hours and, therefore, did not prejudice the other competing movants, nor did it delay the Court in appointing the Lead Plaintiff at the earliest possible time. *See GGCC, LLC v. Dynamic Ledger Sols., Inc.*, No. 17-CV-06779-RS, 2018 WL 1388488, at *4 (N.D. Cal. Mar. 16, 2018) (finding twenty-four hour delay did not cause prejudice or delay); *see also Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at *4 (finding one hour untimeliness did not cause prejudice or delay). The court in *Waterford Twp. Police* found that courts typically find prejudice or significant delay only where there is "egregious tardiness," such as filing weeks or months beyond the deadline. 2017 WL 10667732, at *4 (citing *Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) (rejecting filing "over a year" late)); *see also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) (rejecting filing 30 days late); *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 251 (E.D. Va. 1999) (rejecting filing 60 days late); *Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (rejecting filing 17 days late).

The Lovingier Family's Motion was not egregiously tardy as Bivens filed the Motion the following morning, before the start of normal business hours. The risk of prejudice to the competing movants is essentially non-existent because, as mentioned above, the Lovingier Family's loss was always going to be larger than that of Mr. Robinson and the Poudrier/Rotness Group. "There is similarly little reason to believe that considering [the Lovingier Family's] motion would foil the overall goals of the PSLRA's time provisions 'to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process.'" *GGCC, LLC*, 2018 WL 1388488, at *4.

Third, "refusing to consider [the Lovingier Family's] motion would be an unnecessarily stringent application of the statutory deadlines that would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." *GGCC, LLC*, 2018 WL 1388488, at *4; *see also Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014) (granting movant with greatest financial interest whose motion came after the deadline "is more in keeping with the policy intentions of the PSLRA than punishing [the proposed lead plaintiff] by enforcing a procedural bar"); *Bender*, 2024 WL 588445, at *11 (same). The Lovingier Family "has clearly 'suffered the greatest financial losses over the other movants' . . . . Put simply, [the Lovingier Family] 'is precisely the type of plaintiff Congress hoped would become lead plaintiff.'" *Montesano v. Eros Int'l PLC*, No. CV1914125JMVJAD, 2020 WL 1873015, at *9 (D.N.J. Apr. 14, 2020) (quoting *Reitan*, 68 F. Supp. 3d at 399).

Accordingly, as the presumptively most adequate plaintiff with by far the greatest financial interest in the litigation, the Lovingier family should be appointed Lead Plaintiff. But even if the Lovingier Family were not the most adequate plaintiff (which it is), unique defenses would still plague the competing movants.

**B.    Mr. Robinson is Susceptible to Unique Defenses**

Mr. Robinson is susceptible to disqualifying unique defenses that militate against his appointment. While the Lovingier Family submitted a Declaration providing the Court with certain biographical and identifying information about Terry Clay Lovingier and Barbara Kaye

6

Lovingier (trustees of the Lovingier Family Trust Dated October 13, 1988) (ECF No. 22-6), Mr. Robinson provided *no* such declaration which would enable the Court to make an informed determination as to his ability to adequately represent the Class. "Although it generally suffices for a lead plaintiff movant to make a prima facie showing of adequacy, to do so a movant must supply *some* information about its ability to perform the role of lead plaintiff diligently and effectively." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (internal citations omitted) (emphasis in original); *see also Camp v. Qualcomm Inc.*, No. 18-CV-1208, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (declining to appoint individual with largest financial interest as lead plaintiff in light of his failure "to include any basic details about himself"); *Perez v. HEXO Corp.*, No. 19 CIV 10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) (same). While Mr. Robinson's motion vaguely stated he "works in the real estate industry" (ECF No. 18 at 7), it provided no information on his educational background. Mr. Robinson's failure to provide the Court with adequate information to assess his adequacy precludes his appointment. *See Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (finding movant's failure to provide basic information, including educational background, raised skepticism that movant "possesses the requisite sophistication to serve as lead plaintiff in this action"). Further, without a corroborating declaration, what information Mr. Robinson does provide is unreliable. Mr. Robinson's inability or unwillingness to provide the Court with information sufficient to make a *prima facie* determination as to his adequacy undermines his ability to serve the Class's interests as lead plaintiff.

Mr. Robinson would also saddle the putative Class with *three law firms*. In addition to seeking approval of his selection of The Rosen Law Firm, P.A., he also seeks approval of The Schall Law Firm as Co-Lead Counsel and Martin & Bonnet P.L.L.C. as Liaison Counsel for the Class (ECF No. 18 at 8). "[C]ourts have been concerned that the representation of Lead Plaintiffs by numerous law firms will likely result in lawyer driven litigation." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 415 n.9 (S.D. Tex. 2000) (citing *In re Telxon*, 67 F. Supp. 2d at 815-16; *see also In re Calpine Corp. Sec. Litig.*, No. C 02-1200 SBA, 2004 WL

3316309, at *4 (N.D. Cal. Feb. 5, 2004) (selection of multiple law firms "hints that it is the law firms, and not [the movant] who is running this litigation").

"The potential for duplicative services and the concomitant increase in attorneys' fees work against the approval of more than one law firm, especially in cases in which one law firm has the proven ability to adequately manage and litigate securities class actions." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 115 (D.N.J. 1999). Thus, while courts must give appropriate "weight to plaintiffs' self-selection of class counsel," where plaintiffs selected three law firms, the court in *Haynie v. Cornell University* found "the proposed counsel structure [was] unnecessarily duplicative" and would "not encourage judicial economy and efficiency." No. 3:20-CV-467, 2020 WL 6043947, at *2 (N.D.N.Y. Oct. 13, 2020).

Mr. Robinson does not explain what benefit having three firms – including a proposed "liaison counsel," with The Rosen Law Firm, P.A. and The Schall Law Firm as Co-Lead Counsel – would confer to the Class in this case. Such lack of explanation has caused courts to be wary of appointing lead plaintiff movants. *See In re PolarityTE, Inc. Sec. Litig.*, No. 2:18-CV-510-JNP, 2019 WL 220129, at *4 (D. Utah Jan. 16, 2019) ("Although all proposed counsel appear qualified, Lawi has entirely failed to justify the appointment of three separate law firms as counsel in this matter. This court is concerned that the appointment of three law firms will only lead to exorbitant legal fees and duplicative filings.").

Further, Mr. Robinson does not provide any qualifications for the Court to assess his ability to manage his proposed legal team. Courts are appropriately wary when "a sole individual" seeks to manage "not one, but several law firms." *In re Calpine Corp. Sec. Litig.*, 2004 WL 3316309, at *4 (denying motion for lead plaintiff seeking appointment of multiple law firms as lead counsel). As noted above, Mr. Robinson, "provides no evidence that he could, in fact, fairly and adequately represent the class. Nor does he justify why he needs the legal services of so many firms." *Id.*

**C.    The Poudrier/Rotness Group is Susceptible to Unique Defenses**

The Poudrier/Rotness Group is also susceptible to unique defenses. "Although the PSLRA does not explicitly prohibit a group of unrelated individuals from acting as lead

8

plaintiff, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (quoting *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)). The Poudrier/Rotness Group provides no evidence that Ms. Poudrier and Ms. Rotness were organically joined together to aggregate losses. They provide no information about any relationship pre-dating this Action. Courts discourage unrelated aggregation of losses as it runs afoul to the PSLRA's intention to discourage lawyer-driven litigation. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.") (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997)); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008) ("[I]gnoring the basis of the group formation and appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.").

Ms. Poudrier and Ms. Rotness live in two different countries, on opposite sides of the North American continent, with Leslie Rotness living in Washington state, and Carolle Poudrier living in Québec, Canada (ECF No. 21-4 at ¶¶ 2-3). *See Tsirekidze*, 2008 WL 942273, at *4 ("From their papers, it appears that the Farukh 'Group' consists of three completely unrelated individuals from different parts of the country. There is no suggestion how they plan to work together as a cohesive unit."). The Poudrier/Rotness Group's joint declaration gives only conclusory assurances of its cohesiveness, such as its two members' "shared interest in prosecuting the case in a collaborative and likeminded manner." ECF No. 21-4 at ¶ 6. Courts have rejected substantially similar representations. *See Takata v. Riot Blockchain, Inc.*, No. 18-cv-2293-FLW-TJB, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) ("Although they submitted a timely declaration, the declaration lacks any mention of contact prior to filing the motion: it merely states that the group is made up of investors who have shared 'interests in

prosecuting the case in a collaborative, likeminded manner,' an *identical* representation to one that a court in this district rejected as 'conclusory.'") (quoting *Stires v. Eco Sci. Sols., Inc.*, No. CV 17-3707(RMB/KMW), 2018 WL 5784817, at \*5 (D.N.J. Feb. 14, 2018)).

The Poudrier/Rotness Group's joint declaration further outlines a divisive decision-making structure, stating: "In the event that such a disagreement arises, we agree to resolve such disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our Class Period purchases of Sprouts securities, calculated in terms of U.S. dollars." ECF No. 21-4 at ¶ 5. The Poudrier/Rotness Group already has the lowest financial interest of the competing movants, and its decision-making structure would allow litigation decisions to be made by one investor with an even smaller financial interest. *See Burns v. UP Fintech Holding Ltd.*, No. CV 23-4842-CBM-BFMX, 2024 WL 387261, at \*4 (C.D. Cal. Jan. 30, 2024) (finding a substantially similar decision-making structure, "raises the possibility that litigation decisions will be made by a single investor with a smaller financial stake in the litigation"); *see also Koffsmon v. Green Dot Corp.*, No. CV 19-10701 DDP (EX), 2021 WL 3473975, at \*3 (C.D. Cal. Aug. 6, 2021); *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 WL 6182753, at \*3 (N.D. Cal. Nov. 27, 2018)). Such a structure contravenes the PSLRA's preference for the lead plaintiff to have the greatest financial interest in the relief sought.

The PSLRA's preference for a singular lead plaintiff rather than a group of unrelated persons is to avoid conflicting interests in favor of a unified voice for the Class, while also avoiding lawyer-driven litigation. *See In re Telxon*, 67 F. Supp. 2d 803 at 813; *Tsirekidze*, 2008 WL 942273, at \*3 ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation."). This concern is especially prevalent, whereas here, there are multiple law firms representing different individuals' interests within the group. *In re Telxon*, 67 F. Supp. 2d at 813. The Poudrier/Rotness Group's motion identified both Pomerantz LLP as "Counsel for Movants Leslie Rotness and Carolle Poudrier and Proposed Lead Counsel for the Class" and Bronstein, Gerwitz & Grossman, LLC as "Additional Counsel for Movant Leslie Rotness." ECF No. 20

10

at 15-16. The Poudrier/Rotness Group provides no explanation as to why Leslie Rotness requires separate counsel from the Class. Their separate representation raises concerns that Carolle Poudrier and Leslie Rotness are unlikely to work as a unified group, as their choice of counsel is not even unified. "Such a 'group' would be a 'lead plaintiff' in name only; in substance, those individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole. . . . the Court would be left with little assurance that the 'group' speaks with a collective voice." *In re Telxon*, 67 F. Supp. 2d at 813.

Further, like Mr. Robinson, the Poudrier/Rotness Group would assign three law firms as counsel, raising additional concerns of lawyer-driven litigation. *See In re Waste Mgmt.*, 128 F. Supp. 2d at 415 n.9 (citing *In re Telxon*, 67 F. Supp. 2d at 815-16); *In re Calpine*, 2004 WL 3316309, at *4.

## III.  CONCLUSION

For all of the foregoing reasons, the Lovingier Family respectfully requests that this Court deny the competing motions for appointment as Lead Plaintiff and approval of selection of Lead Counsel and: (1) appoint the Lovingier Family to serve as Lead Plaintiff; (2) approve the Lovingier Family's selection of KSF as Lead Counsel for the Class; (3) grant such other and further relief as the Court may deem just and proper.

DATED: February 9, 2026                    Respectfully submitted,

*/s/ Don Bivens*

**DON BIVENS, PLLC**
Don Bivens (AZ # 005134)
15169 N. Scottsdale Rd., Ste. 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Local Counsel for Lead Plaintiff Movant the Lovingier Family*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (*pro hac vice to be submitted*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant
the Lovingier Family and Proposed
Lead Counsel for the Class*