**DON BIVENS, PLLC**
Don Bivens (AZ # 005134)
15169 N. Scottsdale Rd., Ste. 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Local Counsel for Lead Plaintiff*
*Movant the Lovingier Family*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller *(pro hac vice to be submitted)*
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*the Lovingier Family and*
*Proposed Lead Counsel for the Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Singh Family Revocable Trust U/A DTD 02/18/2019, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Sprouts Farmers Market, Inc., Jack L. Sinclair, and Curtis Valentine, <br><br> Defendants. | No. 2:25-cv-04416-JJT <br><br> **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE LOVINGIER FAMILY'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS** |

## I.  INTRODUCTION

With asserted losses of $(259,313.88), significantly higher than any other movant, Lead Plaintiff Movant the Lovingier Family Trust Dated October 13, 1988 (the "Lovingier Family") is the presumptive Lead Plaintiff in this Action. Peter Robinson, the only other remaining movant,[1] has not rebutted this presumption. Robinson's opposition (ECF No. 28) wastes much ink repeatedly raising one sole issue against the Lovingier Family: its delayed filing. However, one of the three law firms representing Robinson knows firsthand that the time limits in the PSLRA can be relaxed under certain circumstances. The Rosen Law Firm, P.A. ("Rosen") previously represented lead plaintiff movants in a class action securities case who filed a motion for appointment more than *two weeks* after the PSLRA deadline, but were nevertheless appointed lead plaintiff with Rosen approved as lead counsel. *See Bender v. Vertex Energy, Inc.*, No. 4:24-cv-290, 2024 WL 588445 (S.D. Tex. Feb. 1, 2024). As evidenced by the Supplemental Declaration of Don Bivens (ECF No. 26.1, the "Bivens Declaration"), the Lovingier Family sought in good faith to file its motion before the deadline but, due to a technical error, ultimately filed its motion at 7:27 a.m. the following morning (approximately 7.5 hours late). This delay of mere hours neither prejudiced the competing movants nor obstructed the Court in making its Lead Plaintiff decision. Thus, the delayed filing cannot "rob the district court of [its] discretion" to appoint the Lovingier Family—the movant with the greatest losses, and thus the greatest stake in this litigation—as Lead Plaintiff. *Waterford Twp. Police v. Mattel, Inc.*, No. 17-cv-04732, 2017 WL 10667732, at *4 n.1 (C.D. Cal. Sept. 29, 2017). The brief delay does not rebut the presumption that the Lovingier Family is the most adequate plaintiff—no matter how many times Robinson repeats that it does.

Further, the Lovingier Family satisfies the adequacy and typicality requirements of Rule 23 and presents no unique defenses that render it incapable of adequately representing

---

[1] Movant The Singh Family Revocable Trust U/A DTD 02/18/2019 withdrew its motion (ECF No. 23) and the group of Carolle Poudrier and Leslie Rotness filed a notice of non-opposition (ECF No. 27).

the Class. The same cannot be said of Robinson, who provided the Court with no evidence to support his adequacy, and seeks to saddle the Class with three law firms, potentially leading to a lawyer-driven litigation.

For these reasons, and the reasons set forth herein, the Lovingier Family should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

## II. ARGUMENT

### A. The Lovingier Family is the Presumptive "Most Adequate Plaintiff" and Should be Appointed Lead Plaintiff

When determining which movant to appoint as lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. (emphasis in original).

Here, with losses of $(259,313.88), the Lovingier Family unquestionably has the largest financial stake out of any of the lead plaintiff movants in this matter—exceeding Robinson's asserted losses of $(188,976.61) by more than 25%. *See* ECF No. 22-4, ECF No. 18-5. The Lovingier Family's claims arise from the same course of conduct as the putative Class members, there are no potential conflicts between it and the other Class members, and it has retained experienced counsel to represent the Class. Therefore, the Lovingier Family has made the required *prima facie* showing that it satisfies the adequacy and typicality requirements of Fed. R. Civ. P. 23. *See Tenneson v. Nikola Corp.*, No. 23-cv-02131, 2024 WL 905244, at *3 (D. Ariz. Feb. 29, 2024), *report and recommendation adopted*, No. 23-cv-02131, 2024 WL 1796119 (D. Ariz. Apr. 25, 2024). Moreover, Terry Clay Lovingier and Barbara Kaye Lovingier (the Lovingier Family's trust's co-trustees) have submitted a declaration providing biographical information, further supporting the Lovingier Family's adequacy. ECF No. 22-6. As such, the Lovingier Family is the presumptive "most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730.

**B.    Robinson Has Not Rebutted the Presumption that the Lovingier Family is the "Most Adequate Plaintiff"**

The presumption that the movant with the largest financial loss is the most adequate plaintiff "may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)). "That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient." *Cavanaugh*, 306 F.3d at 729 n. 2. Rather, the PSLRA "requires proof that the presumptive lead plaintiff is not adequate." *Mersho*, 6 F.4th at 899.

Robinson has submitted no "proof" that the Lovingier Family is not adequate. His only argument—raised repeatedly in his opposition to the Lovingier Family's motion—relates to the delayed filing. However, as explained in the Bivens Declaration, the delay was due to a technical error that has since been resolved. *See* ECF No. 26.1. This error neither speaks to the Lovingier Family's adequacy nor raises any unique defenses rendering the Lovingier Family incapable of representing the Class.

As Robinson admits (see ECF No. 28 at 6), a number of courts have appointed lead plaintiff movants who claimed the largest financial losses but filed untimely motions. *See, e.g.*, *Waterford Twp. Police*, 2017 WL 10667732, at *8 (appointing movant who filed his motion several hours late); *Ferreira v. Funko, Inc.*, No. 2:20-cv-02319, 2020 WL 3246328, at *4 (C.D. Cal. June 11, 2020) (same); *Montesano v. Eros Int'l PLC*, No. 19-cv-14125, 2020 WL 1873015, at *9 (D.N.J. Apr. 14, 2020) (appointing movant who submitted its motion one day late); *Peters v. Jinkosolar Holding Co.*, No. 11-cv-7133, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012) (appointing group which moved for appointment several weeks after the deadline). In fact, one of the three law firms representing Robinson—Rosen—has firsthand experience representing clients who submitted an application for appointment as lead plaintiff after the PSLRA-imposed deadline. *See Bender*, 2024 WL 588445, at *13. In that case, the

court was persuaded by Rosen's arguments that the timing of the filing was "excusable," appointed Rosen's clients as lead plaintiff, and approved Rosen as lead counsel. *Id*. at \*6.

While Robinson correctly points out that the factual circumstances in some of these cases differ from the matter at hand because the deadline was imposed by the court rather than the PSLRA, he does not cite one case differentiating a court-imposed deadline from that set by the PSLRA. In fact, the reasoning from each of the cases appointing lead plaintiffs who filed untimely motions is generally applicable. For example, in *Bender v. Vertex Energy*, the court explained, "District courts have discretion to consider untimely motions for appointment as lead plaintiff in some circumstances" because "claims-processing rules—'rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times'—are subject to equitable principles unless Congress 'clearly' provides otherwise." 2024 WL 588445, at \*10 (collecting cases).

While Robinson does cite several out-of-district cases finding the PSLRA's deadline to be absolute, these cases present drastically different circumstances from the case at hand. For example, in *Carson v. Clarent Corp.*, No. 01-cv-03361, 2001 WL 1782712, at \*2 (N.D. Cal. Dec. 14, 2001), the court rejected a motion for appointment as lead plaintiff that was filed more than two weeks after the deadline, and in *Stone v. Life Partners Holdings, Inc.*, No. 11-cv-16, 2011 WL 13237569, at \*1 (W.D. Tex. Aug. 12, 2011), the court rejected a motion was filed *twelve weeks* after deadline. These weeks-delayed motions contravened the intent of the PSLRA's 60-day deadline: "to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process." *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010). Here, on the other hand, the filing of the Lovingier Family's motion was delayed by a mere 7.5 hours—before the start of normal business hours on the day following the deadline. The delay neither prejudiced the other movants nor obstructed the Court in "ensuring that the lead plaintiff is appointed at the earliest possible time." *Bender*, 2024 WL 588445, at \*10.

Robinson also cites an out-of-circuit bankruptcy case where an attorney was unable to file a timely motion to reconsider a court's order due to issues with multifactor authentication

4

("MFA"). *See* ECF No. 28 at n. 4 (citing *In re: David James Farnham*, No. 24-bk-30325, 2025 WL 2612637, at *2 (Bankr. M.D. Ga. Sept. 8, 2025)). However, *Farnham* can be easily differentiated from the case at hand because the Federal Rules of Bankruptcy Procedure "expressly forbid[] a court from extending the time" to submit the type of motion for reconsideration submitted late in *Farnham*. 2025 WL 2612637, at *2. Unlike in *Farnham*, the PSLRA does not expressly forbid a court from considering late-filed motions for appointment as lead plaintiff, particularly where "refusing to consider the motion [would] undermine the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." *Bender*, 2024 WL 588445, at *10-11.

Robinson's opposition further states: "There is no affidavit, declaration, or letter from the Lovingier Trust's counsel explaining why its motion was filed late or what steps have been taken to prevent a repeat of that mistake." ECF No. 28 at 6-7. However, the Lovingier Family submitted the Bivens Declaration (ECF No. 26.1)—which explained that the late filing was due to a technical error related to the recent requirement of the use of MFA, and that steps had already been taken to remedy the mistake—before Robinson filed his opposition. *See* Second Supplemental Declaration of Don Bivens, Exhibits A, B. While ignoring the Bivens Declaration, Robinson admits that courts accept late filings where "counsel promptly explained the reason for lateness, often technical or ministerial, and described remedial steps to ensure future compliance" (ECF No. 28 at 6). That is exactly what happened here. The slight delay was caused by a technical issue, and remedial steps have been implemented to avoid similar issues in the future (ECF No. 26-1 ¶¶ 6-8).

Finally, Robinson states, "no prejudice will result to the class from barring the Lovingier Trust Motion from further consideration." ECF No. 28 at 8. But this statement is contrary to the letter and spirit of the PSLRA, the purpose of which is to "protect[] investors who join class actions . . . by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer." H.R. Conf. Rep. 104-369, 32, *see also Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005) ("by enacting the PSLRA, Congress sought to encourage class members with the largest purported losses to act as lead plaintiffs in private

securities litigation."). Consistent with this intent, the court should appoint the movant with the largest financial losses who also satisfies the typicality and adequacy requirements of Rule 23—the Lovingier Family. *See Montesano*, 2020 WL 1873015, at *9 ("While [movant] did make a procedural mistake, overlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing [movant] by enforcing a procedural bar.") (internal citation omitted).

### C.   Robinson Does Not Satisfy the Adequacy Requirement

Because the Lovingier Family is the "most adequate plaintiff," and this presumption has not been rebutted, the question of whether Robinson satisfies the typicality and adequacy requirements of Rule 23 should not be reached. *See Cavanaugh*, 306 F.3d at 730 (once a court had determined the most adequate plaintiff, "[i]t must then focus its attention on *that* plaintiff"). However, if the Court were to consider these factors, it would find Robinson has not demonstrated his adequacy.

First, Robinson proposes three different law firms to represent the Class—Rosen and The Schall Law Firm as Co-Lead Counsel and Martin & Bonnet P.L.L.C. as Liaison Counsel (ECF No. 18 at 8). Robinson has not explained the necessity or value of having so many firms, nor has he explained what measures will be taken to avoid duplicative work and ensure counsel's fees remain reasonable. *See In re PolarityTE, Inc. Sec. Litig.*, No. 2:18-CV-510-JNP, 2019 WL 220129, at *4 (D. Utah Jan. 16, 2019) ("[Movant] has entirely failed to justify the appointment of three separate law firms as counsel in this matter. This court is concerned that the appointment of three law firms will only lead to exorbitant legal fees and duplicative filings."). Additionally, courts have rejected movants represented by multiple firms, as it "suggests that counsel, rather than the [movant], would control this litigation, in contravention of the PSLRA's intent." *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002).

Further, in his initial motion, Robinson vaguely stated he "works in the real estate industry" (ECF No. 18 at 7) but neglected to file a declaration supporting this statement or containing the biographical information necessary to enable the Court to make an informed

determination as to his adequacy. This dearth of personal information was not remedied in his opposition papers and militates against a finding Robinson's adequacy. *See Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (finding movant's failure to provide basic information, including educational background, raised skepticism that movant "possesses the requisite sophistication to serve as lead plaintiff in this action"). The lack of a declaration signed by Mr. Robinson further suggests that counsel—rather than Mr. Robinson—are steering the ship.

**III.    CONCLUSION**

For the foregoing reasons, the Lovingier Family respectfully requests that this Court: (1) appoint the Lovingier Family to serve as Lead Plaintiff; (2) deny all other competing motions for appointment as lead plaintiff, including that of Peter Robinson; (3) approve the Lovingier Family's selection of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: February 17, 2026                     Respectfully submitted,

                                             */s/ Don Bivens*

                                             **DON BIVENS, PLLC**
                                             Don Bivens (AZ # 005134)
                                             15169 N. Scottsdale Rd., Ste. 205
                                             Scottsdale, AZ 85254
                                             Telephone: (602) 762-2661
                                             don@donbivens.com

                                             *Local Counsel for Lead Plaintiff*
                                             *Movant the Lovingier Family*

                                             **KAHN SWICK & FOTI, LLC**
                                             Kim E. Miller (*pro hac vice to be submitted*)
                                             250 Park Avenue, 7th Floor
                                             New York, NY 10177
                                             Telephone: (212) 696-3732
                                             Facsimile: (504) 455-1498
                                             kim.miller@ksfcounsel.com

                                             *Counsel for Lead Plaintiff Movant*
                                             *the Lovingier Family and Proposed*
                                             *Lead Counsel for the Class*