WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Singh Family Revocable Trust U/A Dated 2/18/2019,<br>Plaintiff,<br>v.<br>Sprouts Farmers Market Incorporated, et al.,<br>Defendants. | No. CV-25-04416-PHX-KML<br>**ORDER** |

The Private Securities Litigation Reform Act ("PSLRA") requires all motions seeking appointment as lead plaintiff be filed "not later than 60 days after the date on which" notice of a pending class action is published. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). In this case, that 60-day deadline was January 26, 2026. Putative class member Peter Robinson filed his motion on that date, but another putative class member—the Lovingier Family Trust—filed a competing motion the following morning. The parties disagree whether the court can or should excuse the untimely filing. Assuming the statutory deadline can be extended in these circumstances, which is doubtful, the Lovingier Family has not met the demanding standard for doing so. Robinson is appointed as lead plaintiff.

## I. Background

This is a securities fraud action brought against defendants Sprouts, its Chief Executive Officer, and its Chief Financial Officer. The allegations involve the CEO making overly-optimistic public statements regarding Sprouts' future business prospects. After more information was revealed, Sprouts' stock dropped approximately "26.11% in the span

of just a single day." (Doc. 1 at 19.) The complaint was filed on November 24, 2025, and notice of this suit was published on November 26, 2025. (Docs. 1, 17-3.) That publication date meant motions to be appointed lead plaintiff were due on January 26, 2026.

On January 26, 2026, putative class member Peter Robinson filed a motion to be appointed lead plaintiff. (Doc. 18.) Also on January 26, 2026, lead counsel for putative class member the Lovingier Family sent its local counsel a finalized motion to have the Lovingier Family appointed as lead plaintiff. (Doc. 26-1 at 2.) Local counsel attempted to file that motion on January 26, 2026, but was unable to do so because his "paralegal had not previously utilized [the attorney's] CM/ECF and/or PACER account(s) with Multifactor Authentication to make a filing." (Doc. 26-1 at 2.) The paralegal needed to speak with the attorney to complete the filing but for unexplained reasons could not reach him that evening. (Doc. 26-1 at 2.) The paralegal and local counsel "connected via telephone early in the morning on January 27, 2026," and the motion on behalf of the Lovingier Family was filed at 7:27 a.m. on January 27, 2027. (Doc. 22.) Other putative class members also filed timely motions to be appointed lead plaintiff. (Docs. 16, 20.) One of those motions was withdrawn (Docs. 16, 23), and the other resulted in that putative class member concluding Robinson—not the Lovingier Family—was the "presumptive 'most adequate plaintiff'" (Doc. 27 at 2).

## II. Analysis

It is undisputed the Lovingier Family suffered a loss of $259,313.88 while Robinson suffered a loss of $188,976.61. (Doc. 28 at 10.) Because the largest loss is a significant factor in evaluating the appropriate lead plaintiff, determining who should be appointed largely comes down to whether the court should consider the Lovingier Family's motion timely filed.

### A. Timeliness of Lovingier Family's Motion

As relevant here, the PSRLA requires two events at the beginning of a securities class action. First, within 20 days of the complaint being filed, notice must be provided to the putative class. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). And second, "not later than 60 days

after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Lovingier Family argues this 60-day deadline can be extended, Robinson argues it cannot. Neither side has provided Ninth Circuit authority and district courts across the country are split.

Some district courts have adopted an absolute rule that "the deadline for motions for appointment as lead plaintiff is unequivocal and allows for no exceptions." *Bender v. Vertex Energy, Inc.*, No. 4-24-CV-290, 2024 WL 588445, at *6 (S.D. Tex. Feb. 1, 2024) (citing cases). Other district courts have concluded they "have discretion to consider untimely motions for appointment as lead plaintiff in some circumstances." *Id.* at *10 (citing cases). The Lovingier Family invokes the latter line of authority, but many of those cases did not involve the statutory deadline. For example, two cases involved a movant who failed to comply with a court-imposed deadline, but the motion still complied with the statutory 60-day deadline. *Waterford Twp. Police v. Mattel, Inc.*, No. 17CV04732VAPKSX, 2017 WL 10667732, at *4 (C.D. Cal. Sept. 29, 2017) (filed after 4:00 p.m. court deadline but still on date motion was due based on statutory deadline); *Ferreira v. Funko, Inc.*, No. 2:20-CV-02319-VAP-PJWX, 2020 WL 3246328, at *4 (C.D. Cal. June 11, 2020) (same). In permitting those motions, the courts were extending their own deadlines instead of the statute's. Another case cited by the Lovingier Family involved unique circumstances where a motion was timely filed, but the movant used the incorrect case number. *GGCC, LLC v. Dynamic Ledger Sols., Inc.*, No. 17-CV-06779-RS, 2018 WL 1388488, at *3 (N.D. Cal. Mar. 16, 2018); *see also Bender*, 2024 WL 58845, at *2, *6 (movant timely filed notice in a different district). There are no similar circumstances here.

There are a limited number of cases involving an extension of the statutory deadline of the sort the Lovingier Family seeks. Those courts have concluded they have discretion to extend the statutory deadline but do not identify that discretion's source. *See Peters v. Jinkosolar Holding Co.*, No. 11 CIV. 7133 JPO, 2012 WL 946875, at *10 (S.D.N.Y. Mar. 19, 2012) (not identifying legal basis for extension); *Montesano v. Eros Int'l PLC*, No.

CV1914125JMVJAD, 2020 WL 1873015, at *9 (D.N.J. Apr. 14, 2020) (same). *Bender* provides the clearest explanation in concluding the 60-day deadline is a "claims-processing rule[]" that is "subject to equitable principles unless Congress clearly provides otherwise." 2024 WL 588445, at *10 (simplified). The Lovinger Family relies on this portion of *Bender* to argue for an extension. (Doc. 30 at 5.) Assuming equitable tolling of the 60-day period is available—which is the minority view, and is doubtful given the statute's clear text—the Lovingier Family has not established it applies here.

A party "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (simplified). The diligence prong requires the party seeking tolling to "show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Id.* at 598–99.

The Lovingier Family's motion for appointment provided no explanation for the untimely filing. (Doc. 22-1.) Quite the opposite, it misstated that the Lovingier Family "ha[d] timely filed his motion within the 60-day period following publication of [the] Notice." (Doc. 22-1 at 3.) The Lovingier Family then waited nearly two weeks, until its response to the timely motions was due, to provide *any* explanation of what happened. (*See* Doc. 26-1 at 2.) And neither that explanation, nor the response accompanying it, recognized the Ninth Circuit's standard for equitable tolling or provided facts to meet that standard.

The court assumes the last-minute difficulties with electronic filing could qualify as an "extraordinary circumstance" sufficient to meet the second element of the equitable-tolling test. But as to the first prong, the Lovingier Family would need to provide evidence that it "acted diligently but had not been able to file earlier." *Id.* at 601. In other words, the Lovingier Family would need to explain its behavior leading up to the last-minute filing difficulties. The Lovingier Family's belated explanation lacked sufficient detail regarding counsel's diligence on the date of the filing—for example, the paralegal's mysterious

inability to reach counsel for hours remains unexplained (Doc. 26-1 at 2)—and provided no evidence of its behavior leading up to the deadline. Because the Lovingier Family has not carried its burden of establishing equitable tolling, the 60-day statutory deadline bars the court from considering its motion.

**B. Robinson as Lead Plaintiff**

The PSLRA requires a "three-step process for the selection of lead plaintiff." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). The first step of requiring notice has already occurred. The second step requires the court "determine which movant is the most adequate plaintiff, which is defined as the plaintiff most capable of adequately representing the interests of class members." *Id.* (simplified). This requires the court identify "which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality." *Id.* That movant is presumptively the lead plaintiff. Once a presumptive plaintiff is identified, step three allows other potential plaintiffs the "opportunity to rebut the presumptive lead plaintiff's showing that it satisfies [the] typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). This "presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Mersho*, 6 F.4th at 899 (simplified).

As the only remaining timely movant, Robinson has the "largest loss," meaning the court need only evaluate whether he "has made a prima facie showing of adequacy and typicality." *Id.* This determination "is not adversarial" and "should be based on only the movant's pleadings and declarations." *Id.*

Beginning with "adequacy," the court must evaluate "two questions: (1) do the movant and its counsel have any conflicts of interest with other class members and (2) will the movant and its counsel prosecute the action vigorously on behalf of the class?" *Id.* at 899–900 (simplified). There is no evidence of conflicts of interest with other class

members, and both Robinson and his counsel appear willing and able to prosecute this action vigorously. Robinson has made a prima facie showing of adequacy.

"The test for typicality asks whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Borteanu v. Nikola Corp.*, 562 F. Supp. 3d 174, 181 (D. Ariz. 2021) (simplified). Robinson argues his claims are typical because he "purchased the Company's securities at prices artificially inflated due to Defendants' misrepresentations and omissions, and was damaged thereby." (Doc. 18 at 7.) The present evidence shows Robinson suffered the same type of injuries based on the same conduct as other class members, so the requirement of typicality is met.

Robinson has made a sufficient showing of adequacy and typicality, so he is presumptively the lead plaintiff. The final step is to assess whether the Lovingier Family has shown by "the preponderance of the evidence" that Robinson should not be appointed. *In re Crain Walnut Shelling, LP*, 175 F.4th 1069, 1079 (9th Cir. 2026). The Lovingier Family ventures two arguments in support of its position. First, Robinson allegedly did not provide sufficient biographical information to allow the court to assess his adequacy. Second, Robinson's decision to retain three law firms to act as counsel establishes he is not adequate. Neither argument is convincing.

Robinson "lives in Rochester, New York and has been investing for 15 years." (Doc. 18 at 7.) He describes himself as working "in the real estate industry" (Doc. 18 at 7) and states he is "willing to serve as a representative party on behalf of a Class of investors . . . including providing testimony at deposition and trial, if necessary" (Doc. 18-4 at 2). The Lovingier Family argues Robinson's failure to provide additional biographical information, such as his "educational background," should preclude his appointment as lead plaintiff. (Doc. 26 at 11.) The Ninth Circuit has rejected the idea that a court can engage in a "freewheeling comparison of the parties competing for lead plaintiff," such as "questioning [each plaintiff] about their business acumen." *In re Cavanaugh*, 306 F.3d at 732. There is no requirement that Robinson provide more detailed information and the

Lovingier Family's first argument fails.[1]

The Lovingier Family's other argument attempting to rebut the presumption is that Robinson retained three law firms to pursue this case. Although not entirely clear, the Lovingier Family appears to believe its retention of two law firms was reasonable, but Robinson's retention of three law firms establishes he should not be appointed lead plaintiff. The Lovingier Family's argument again misapplies controlling Ninth Circuit authority.

The court "has no authority to select for the class what it considers to be the best possible lawyer or the lawyer offering the best possible fee schedule. Indeed, the district court does not select class counsel at all." *Id.* The court's task is "only to determine whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* Here, Robinson has selected The Rosen Law Firm, P.A. and the Schall Law Firm as "Co-Lead Counsel," and Martin & Bonnett P.L.L.C. as "Liaison Counsel." (Doc. 18 at 2.) The Rosen Law Firm and the Schall Law Firm have extensive experience in securities litigation, and Martin and Bonnett routinely litigate matters in the District of Arizona. The Lovingier Family does not provide any evidence showing Robinson's choice to retain three firms, or these three firms in particular, comes close to "irrational." Vague arguments that hiring three firms instead of two should preclude Robinson's appointment are not convincing. The Lovingier Family has not rebutted the presumption.

Accordingly,

**IT IS ORDERED** the Motions to Appoint Lead Plaintiffs (Doc. 20, 22) are **DENIED**.

[1] The Lovingier Family cites a case from the Southern District of California that faulted a movant for not including adequate biographical information when seeking appointment as the lead plaintiff. *Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019). In that case, the movant did not provide "any basic details about himself, including where he lives or who he is specifically." *Id.* That movant also made false statements and "significant errors" in calculating his losses. *Id.* The present situation is different in that Robinson has identified where he lives and there are no "significant errors" in his filings.

**IT IS FURTHER ORDERED** the Motion to Appoint Lead Plaintiff (Doc. 18) is **GRANTED**. Peter Robinson is appointed lead plaintiff. The Rosen Law Firm, P.A. and The Schall Law Firm are appointed as Co-Lead Counsel and Martin & Bonnett P.L.L.C. is appointed as Liaison Counsel.

**IT IS FURTHER ORDERED** within **seven days** of this order lead plaintiff and defendants shall meet and confer, and file a proposed schedule for the filing of an amended complaint and response thereto.

Dated this 4th day of September, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**